**IN THE COURT OF APPEALS OF IOWA**

No. 25-0896
Filed September 4, 2025

**IN THE INTEREST OF D.P.,**
**Minor Child,**

**C.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Harrison County, David Brooks, Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

Maura C. Goaley, Council Bluffs, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Keith Tucker of Woods Wyatt & Tucker P.L.L.C., Glenwood, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**LANGHOLZ, Judge.**

A three-month-old daughter was removed from her parents' custody after it was discovered that her father had caused bruises on her face.[1] And more than two years after the daughter's removal, the mother still had not progressed beyond supervised visits and refused to take responsibility for her positive drug tests. So the juvenile court terminated the mother's parental rights. And she now appeals.[2]

On our de novo review, we agree with the juvenile court. The State provided clear and convincing evidence that the daughter could not be returned to the mother at the time of the termination hearing given the mother's positive drug tests and her failure to progress beyond supervised visits. We also agree that termination is in the daughter's best interest because of the mother's failure to fully address the safety concerns she poses to the daughter and the daughter's success in her current placement. And the mother failed to preserve error on her argument that the court should have applied the parent-child-bond exception. We thus affirm the termination of the mother's parental rights.

## I. Factual Background and Proceedings

In November 2022, a then-three-month-old daughter came to the attention of the Iowa Department of Health and Human Services ("HHS") over allegations that the daughter had bruises on her face from her father. At this time, the mother and father were violating a no-contact order that had been entered because of the

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25

[2] The juvenile court also terminated the father's parental rights. But he does not appeal. So we focus on the mother.

father's previous domestic abuse of the mother. Police officers recommended that the mother take the daughter to a child-abuse-services provider in Omaha, Nebraska for a forensic interview and a medical examination. The mother did not do so. And HHS thus had to schedule the interview and examination. HHS's child-abuse assessment found that the father physically abused the daughter and that the mother abused the daughter by omission. The mother agreed to a safety plan that she would comply with the no-contact order between her and the father. And she agreed to participate in services from HHS.

After a January 2023 adjudication hearing, the juvenile court found the daughter a child in need of assistance. The court ordered the daughter to be placed into HHS's custody and the family to participate in services offered by HHS. The court also ordered the mother to get a mental-health evaluation and engage in domestic-violence-advocacy services. Initially, the daughter was placed with a relative of her half-sibling. And then in February 2023, she was placed with her paternal aunt and uncle.

A dispositional hearing was held a month after the daughter had been placed with her aunt and uncle. The mother was living in Little Sioux at the time. She was employed at a fast-food restaurant and was an Instacart shopper. She had not yet completed a mental-health evaluation or engaged in services for domestic-violence advocacy. The mother had only supervised visitation with the daughter. And HHS reported that she was "attentive" to the daughter during the visits. A no-contact order remained in place between the mother and father—and they had violated it again at least once.

After the hearing, the mother started engaging in domestic-abuse services through Catholic Charities—though she did not attend classes regularly. The mother still was not attending therapy. And concerns remained that the mother and the father were living together at her home in violation of the no-contact order. The mother then moved from her home and reported she was living with friends from work. She started seeing an online therapist in April 2023 and obtained a mental-health evaluation in May. And the mother was consistently attending all her supervised visits with the daughter.

A review hearing was held in August, where it was reported that the daughter was doing well in her placement and was healthy with no developmental concerns. The mother testified that she had missed a few therapy appointments and still had not fully completed mental-health treatment. The court changed the daughter's permanency goal from reunification to termination of parental rights and adoption. It reasoned that the mother had not complied with court-ordered services or made sufficient progress and could not safely resume care of the daughter at the time of the hearing or in the future if additional time was granted.

The State filed a petition for termination of parental rights in October that was heard by the juvenile court in February 2024. Because more time was needed for testimony, a second day of hearing was scheduled in May. But during this time, the mother made enough progress with her participation in various services that the State moved to postpone the completion of the termination hearing until August. Also in August—for the first time—the mother progressed to semi-supervised visits with the daughter because she was "progressing and doing well."

But a month later, an HHS worker visiting the mother's home noticed a "hollowed-out pen" on the table that resembled drug paraphernalia. When the HHS worker confronted the mother, the mother denied that the pen was hers, saying that she had found it in her robot vacuum. The worker scheduled the mother for a drug test the next day—which the mother "begged and pleaded" be rescheduled to another date. And the mother tested positive for methamphetamine—while still denying ever using methamphetamine. Because of the positive test, she returned to professionally supervised visits with the daughter.

The mother completed a new substance-use evaluation a month after the positive drug test. The evaluation diagnosed her with "Severe Cannabis use disorder, unspecified alcohol related disorder and unspecified amphetamine type related disorder." And it recommended that she participate in extended outpatient care and complete a new psychiatric evaluation.

In January 2025, the State filed the current petition to terminate the mother's parental rights. And HHS continued to offer services to the mother after the petition was filed. After her most recent substance-use evaluation, the mother started attending her appointments for substance-use treatment. And she was set to possibly move to semi-supervised visits in March.

But then the mother had another random drug test in early March—just as she was successfully completing her substance-use treatment—that came back positive for methamphetamine and THC. She again claimed that she had never used methamphetamine so the result must be a false positive. The next month, the mother requested that her visits with her daughter change from two separate

two-hour visits each week on Wednesdays and Fridays to a single four-hour visit on Wednesdays so she could have friends visit and stay over on the weekends.

The daughter is still doing well in her placement with her aunt and uncle. HHS reports that she is "happy, healthy, and comfortable."

A termination hearing was held in April 2025. An HHS worker testified that he believed it was in the daughter's best interest to terminate the mother's parental rights. The worker acknowledged that the mother had been attending therapy since 2023, but it concerned her that the therapist "could not provide [the mother] the services that this Court was ordering her to comply with." The daughter's guardian ad litem also recommended termination, explaining that while he had initially opposed termination he had changed his mind to believe that "[t]his case has been open for too long" and the daughter "deserves permanency" that the mother cannot provide her. And the juvenile court ultimately agreed, terminating the mother's parental rights to the daughter.

First, the juvenile court found that the State proved termination was warranted for the mother under paragraphs "e" and "h" of Iowa Code section 232.116 (2025). For both paragraphs, the court reasoned that the daughter had been adjudicated in need of assistance and had been removed from the mother's custody for at least six consecutive months. For paragraph "e," the court also found that the mother had not maintained significant and meaningful contact with the daughter and did not make reasonable efforts to resume care of the daughter. And for paragraph "h," the court also found that the daughter was younger than three years old and that she could not be returned to her mother's care at the time of the hearing. It reasoned that the mother's positive drug tests,

her refusal to take responsibility for the positive tests, and the mother's failure to progress past supervised visits demonstrated that she could not resume care of the daughter.

Second, the court found that it was in the daughter's best interest for the mother's parental rights to be terminated reasoning that it did not believe that the mother would "be able to resume care of [the daughter] for the foreseeable future, which is especially troubling given the length of time the CINA case has been open." The court acknowledged that the daughter was with a family that provided her "security and stability" and they wanted to adopt her which would give her the "long-term care and nurturing she needs."

And third, the court declined to apply any permissive statutory exception to termination.

The mother now appeals the juvenile court's termination order.

## II.     Statutory Ground

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the mother's parental rights under both paragraphs "e" and "h" of Iowa Code section 232.116(1). Because we may affirm

if any ground is adequately supported, *see In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020), we elect to consider only whether the State satisfied paragraph "h." The first three elements of this ground for termination are not in dispute—the daughter is under three years old, was adjudicated in need of assistance, and has been removed from the home for the last six consecutive months. *See* Iowa Code § 232.116(1)(h)(1)-(3). So we focus on the fourth element—whether clear and convincing evidence shows the daughter could not be returned to the mother's custody at the time of the termination hearing. *See id.* § 232.116(1)(h)(4); *see also In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (explaining that the issue is whether the daughter could be returned "at the time of the hearing").

The mother argues that the daughter could have been returned to her at the time of the hearing "as there was no imminent risk of harm and the mother had suitable housing." She claims she has "alleviated the issues that led to adjudication." And she argues that she was "trying to do everything that was asked of her," like participating in counseling and outpatient treatment to be reunited with the daughter.[3]

We find that clear and convincing evidence shows that the daughter could not be returned to the mother at the time of the termination hearing. Over the two years that this case has been going on, the mother has only had one month of semi-supervised visits. Otherwise, the mother has not progressed past fully

---

[3] In her petition on appeal, the mother makes some stray references to reasonable efforts and additional time for reunification. But she did not include either of these issues as one of her separately enumerated issues on appeal or support them with sufficient argument and authority for us to consider them—so they are waived. *See In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (en banc).

supervised visits. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) (holding that because a mother did not make the "necessary progression" to unsupervised visits or trial home visits, the court could not "say the children could have returned to the mother's care"). Whenever the mother has been close to progressing to semi-supervised visits, she has had a positive drug test for methamphetamine that sets back her progress. And the mother has refused to take accountability for these positive tests—blaming it on prescription medications she was taking and claiming she has never used methamphetamine. The mother's current living arrangement is also concerning. She testified that her neighbors are using methamphetamine. And she acknowledged that it was "not an appropriate place to have [her] daughter."

We thus agree with the juvenile court that there is clear and convincing evidence that the daughter could not be returned to the mother's custody at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("[H]ope" that a parent "might eventually be able to parent [the child] safely and consistently" based on some progress is "gambl[ing] with the children's future by asking them to continuously wait for a stable biological parent." (cleaned up)). And so, we affirm the juvenile court's finding that the State proved grounds for termination under Iowa Code section 232.116(1)(h).

### III.    Best Interests

The mother also challenges the second step—whether it is in the daughter's best interest to terminate her parental rights. The mother argues that she and the daughter have a "meaningful connection" and that it would be "detrimental to the child's mental health to terminate" her parental rights. She claims she was having

"successful visits" with the daughter and that she "went above and beyond by seeking out services that were not court ordered to try to improve herself and her parenting skills."

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the daughter's long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

The mother's best-interest argument overlooks that the daughter has spent the majority of her young life out of the mother's custody. And we agree with the juvenile court that the mother will not "be able to resume care of [the daughter] for the foreseeable future, which is especially troubling given the length of time the CINA case has been open." The mother has not shown that she can place her daughter's needs above her own—indeed, she requested a reduction in the frequency of her visits "so she could hang out with her friends and have people stay over" on Fridays. And the HHS worker testified that she did not believe that the mother understood how to "safe[l]y protect" the daughter while in her care.

Meanwhile, the daughter is doing well in her placement. And the family would like to adopt her. While we do not doubt that the mother loves her daughter, it is in the daughter's physical, mental, and emotional best interest to terminate the mother's parental rights.

### IV. Parent-Child-Bond Exception

Finally, the mother argues that the court should have instead applied the parent-bond exception under Iowa Code section 232.116(3)(c). But the mother did not make any argument on the bond between the mother and daughter at the hearing. Nor did she present any evidence on how termination would be detrimental to the bond between them. This issue is thus not preserved for our appellate review, and we will not consider its merits on appeal. *See In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025) (en banc). We thus affirm the juvenile court's termination of the mother's parental rights to the daughter.

**AFFIRMED.**